UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PATRICIA WOLMAN, ET AL.,

                Plaintiff,        MEMORANDUM & ORDER
                                         10-CV-1326 (JS)(ETB)
    - against -

CATHOLIC HEALTH SYSTEM OF LONG ISLAND,
INC., ET AL.,

                Defendants.
----------------------------------------X
APPEARANCES:

For Plaintiffs:     Justin Michael Cordello, Esq.
                   James Nelson Thomas, Esq.
                   Jessica Lynne Witenko, Esq.
                   Michael J. Lingle, Esq.
                   Peter John Glennon, Esq.
                   Thomas & Solomon LLP
                   693 East Avenue
                   Rochester, NY 14607

For Defendants:     James E. McGrath , III, Esq.
                   Adriana Stefanie Kosovych, Esq.
                   Michael T. McGrath, Esq.
                   Michael Christopher Moon, Esq.
                   Randi Brooke Feldheim, Esq.
                   Putney, Twombly, Hall & Hirson LLP
                   521 Fifth Avenue
                   10th Floor
                   New York, NY 10175

SEYBERT, District Judge:

        Plaintiffs Patricia Wolman, Kelly Iwasiuk, and Dennis Lundy ("Plaintiffs"), on behalf of others similarly situated, filed this putative class action alleging that Defendants[1] failed to pay

---

[1] Catholic Health System of Long Island Inc., d/b/a Catholic Health Services of Long Island, Good Samaritan Hospital Medical Center, Mercy Medical Center, New Island Hospital a/k/a St. Joseph Hospital, St. Catherine of Siena Medical Center, St. Charles Hospital and Rehabilitation Center, St. Francis Hospital, Roslyn, New York, Our Lady of Consolation Geriatric Care Center,

them for all hours they worked. To that end, Plaintiffs assert statutory claims under the Fair Labor Standards Act ("FLSA"), the Racketeer Influenced and Corrupt Organization Act ("RICO"), and the New York Labor Law, along with a host of common law claims. Defendants have moved to dismiss. For the following reasons, that motion is GRANTED.

BACKGROUND

The Second Amended Complaint ("SAC") totals 217 paragraphs, and is replete with naughty buzzwords like "fraud" and "racketeering." But, at its core, this case is very simple. Plaintiffs allege that Defendants did not pay them for all the hours they worked. In this regard, Plaintiffs complain about three aspects of Defendants' work and pay policies. First, Plaintiffs contend that Defendants frequently required them to work during their meal and break periods, but did not pay them for this time (hereafter, "Unpaid Break Policy"). (SAC ¶¶ 55-76.) Second, Plaintiffs allege that Defendants "suffered or permitted" them to work "before and/or after their scheduled shifts," without compensating them for this time (hereafter, "Unpaid Time Policy"). (SAC ¶¶ 77-80.) And third, Plaintiffs claim that Defendants did not pay them to attend "compensable training sessions" (hereafter, "Unpaid Training Policy"). (SAC ¶¶ 81-85.)

---

Nursing Sisters Home Care d/b/a Catholic Home Care, and James Harden (collectively "Defendants").

Defendants have moved to dismiss on a number of grounds.

I. Standard of Review

In deciding motions to dismiss brought under Rule 12(b)6 of the Federal Rules of Civil Procedure, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Iqbal). Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss. Id. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

II. FLSA Claims

Plaintiffs' first cause of action asserts violations of the FLSA. This cause of action consists of two paragraphs: (1) a paragraph re-alleging the prior 184 paragraphs "as if fully stated herein"; and (2) a conclusory statement that Defendants "willfully violated their obligations under the FLSA." (SAC ¶¶ 185-86.) So it's a little unclear what kinds of FLSA claims Plaintiffs purport to assert. Construing the SAC in its entirety, the Court presumes

3

that Plaintiffs intended to assert overtime and so-called "gap time"[2] FLSA claims, but not minimum wage claims. In this regard, the Court notes that the SAC repeatedly contains statements akin to Defendants not paying Plaintiffs "for all hours worked including those worked both under and in excess of forty in a work week," (SAC ¶¶ 165, 175) but does not even mention the words "minimum wage" anywhere within its 217 paragraphs.

The Court will consider Plaintiffs' overtime and gap time claims. But, before doing so, the Court will first examine what facts Plaintiffs plead to support their allegations regarding the Unpaid Break, Unpaid Time, and Unpaid Training Policies, so it can determine what allegations actually support these claims.

A. Unpaid Break Policy

The SAC alleges that "defendants expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently require their employees to work during their unpaid breaks." (SAC ¶ 62.) To that end, the SAC alleges, among other things, that Plaintiffs: (i) are not asked to leave their work location during breaks (id. ¶ 63); (ii) perform work "in plain

---

[2] A "gap time" claim alleges unpaid work below the overtime threshold, and generally seeks straight-time pay for the unpaid hours. See Conzo v. City of New York, 667 F. Supp. 2d 279, 282-84 (S.D.N.Y. 2009). For example, a non-exempt employee not under a college bargaining agreement enjoys a 40 hour a week overtime threshold. 29 U.S.C. § 207(a)(2)(c). If such an employee alleges that he was not paid for hours 35 to 40 in a given week, he has asserted a "gap time" claim for those five unpaid hours.

4

sight and at management's request" during unpaid breaks (id. ¶ 68); (iii) have been expressly directed by "Defendants' management" to work during unpaid breaks (id. ¶ 69); and (iv) have been rebuffed by management when they complained about not getting paid for work performed during breaks (id. ¶¶ 70-71).

Defendants contend that the Unpaid Break Policy claims fail to comply with Iqbal's pleading standards because Plaintiffs do not expressly plead "by whom was [work] performed, for how long, and, most importantly, why did the employee not follow the specified procedures to obtain compensation for the 'missed' break?" (Def. Br. at 20.) The Court disagrees. Iqbal does not demand this degree of specificity. Iqbal only requires that Plaintiffs plead only enough facts to render a claim plausible. Here, with respect to the Unpaid Break Policy, Plaintiffs have done so. Among other things, they have alleged that management directed them to work during break times, and that management rejected their efforts to obtain compensation for this work. (SAC ¶¶ 62-71.)

Thus, for purposes of this motion, the Court accepts as true that Plaintiffs frequently performed compensable work during their unpaid breaks, with Defendants' knowledge and/or approval.

B. <u>Unpaid Time Policy</u>

Plaintiffs also allege that "Defendants suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shifts," but "failed to

5

pay" them for this work. (SAC ¶¶ 77, 78.) Plaintiffs do not, however, plead any facts describing what kind of work they performed before or after their shifts, or how long these tasks took. Thus, Defendants contend, the Unpaid Time Policy allegations do not suffice under <u>Iqbal</u>. This time, the Court agrees.

Under the FLSA, not all time spent on work related tasks before or after a shift is compensable. "[P]reliminary / postliminary activity," such as "changing clothes," is not compensable. <u>See</u> <u>Albrecht v. Wackenhut Corp.</u>, 379 Fed. Appx. 65, 66, n.1 (2d Cir. 2010) (unpublished) (internal citations and quotations omitted); 29 U.S.C. § 254(a)(2) (no obligation to compensate for "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities"). And even "principal" work activities are not compensable, if an employee spends only "<u>de</u> <u>minimis</u>" time on them before or after a shift. <u>Albrecht</u>, 379 Fed. Appx. at 66.

Here, the SAC pleads no facts concerning what kind of work Plaintiffs allegedly performed before and after their shifts, or whether Plaintiffs typically spent more than de minimis time on these tasks. At most, the fact that Defendants did not compensate Plaintiffs for "work before and/or after the end of their scheduled

6

shifts" is "consistent" with an FLSA claim. Iqbal, 129 S. Ct. at 1949. But, without factual allegations indicating that this work was legally compensable (i.e., did not consist solely of preliminary / postliminary activities, and/or de minimis principal work), the Court finds that Plaintiffs have not stated a "plausible" claim for relief. Id. at 1951; see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 595 (2d Cir. 2007) (pre-Iqbal/Twombly, affirming dismissal and denial of leave to amend FLSA complaint predicated on uncompensated preliminary activities, including "time spent entering and exiting the facility, and donning and doffing a helmet, safety glasses and boots").[3]

C. Unpaid Training Policy

Lastly, Plaintiffs allege that "Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs," but failed to pay them "for all time spent attending such training sessions." (SAC ¶¶ 81, 82.) Defendants argue that Plaintiffs' Unpaid Training Policy claims fail for the

---

[3] Admittedly, Gorman is not entirely on-point. In Gorman, the plaintiffs pled facts demonstrating that the unpaid work was not compensable, while Plaintiffs here plead no specific facts at all. Yet Gorman is instructive. If, as in Gorman, Plaintiffs predicate their claims on non-compensable work, it makes no sense to enable Plaintiffs to avoid dismissal simply though artful, vague pleading, and in so doing subject Defendants to burdensome discovery. This is particularly so given that the relevant facts are wholly within Plaintiffs' possession. In this regard, the Court notes that Plaintiffs obviously know what kind of work they performed before and after a shift, and how long they spent on these tasks.

same reason that the Unpaid Work Policy claims fail: the lack of any factual allegations reflecting that this time was compensable. Again, the Court agrees.

"Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable." Chao v. Tradesmen Int'l, 310 F.3d 904, 907 (6th Cir. 2002). However, training programs are not compensable if: "(a) Attendance is outside of the employee's regular working hours; (b) Attendance is in fact voluntary; (c) The course, lecture, or meeting is not directly related to the employee's job; and (d) The employee does not perform any productive work during such attendance." 29 C.F.R. § 785.27.

Here, Plaintiffs baldly allege that the unpaid training was "compensable," but plead no facts supporting that conclusory allegation. (SAC ¶¶ 81-85.) On the contrary, one of the few genuine facts that Plaintiffs do plead – that Defendants "suffered or permitted" Plaintiffs to attend these programs – suggests, if anything, that the training programs were voluntary, and thus possibly non-compensable. (SAC ¶ 81.) So, once again, the fact that Defendants did not compensate Plaintiffs for certain time (in this case training programs) is, at most, "consistent" with an FLSA claim. Iqbal, 129 S. Ct. at 1949. But without some basic information suggesting the compensable nature of those programs,

8

the Court cannot find that Plaintiffs have stated a "plausible" claim for relief.[4] Id. at 1951.

   D. Application to Plaintiffs' FLSA Claims

As discussed above, the Court finds that Plaintiffs have set forth enough facts to plausibly claim uncompensated work based on the Unpaid Break Policy, but not based on the Unpaid Time and Unpaid Training Policies. So the Court must decide what consideration, if any, to afford Plaintiffs' vague allegations concerning the Unpaid Time and Unpaid Training Policies, when assessing Plaintiffs' FLSA claims. One could argue that, although sparse, these allegations bolster the plausibility of Plaintiff's FLSA overtime claim. But, after consideration, the Court doesn't think so. The conclusory allegation that Plaintiffs performed "work before and/or after the end of their scheduled shifts" (SAC ¶ 77) fails because Plaintiff pled no facts to support that this "work" was compensable, rather than preliminary, postliminary, or de minimis. And the conclusory allegation that Plaintiffs attended "compensable training programs" (SAC ¶ 81) fails because Plaintiffs pled no facts to support that these training programs were, in fact, compensable. Thus, under either theory, Plaintiffs have

---

[4] Again, this is not a high burden. Plaintiffs obviously know what kind of training programs they attended, whether these programs were voluntary, when they typically took place, and whether they performed productive work during them. For example, it is not difficult for a plaintiff to identify his/her job responsibilities, and explain how a training program is "directly related" to them. 29 C.F.R. § 785.27(c).

really pled only conclusory allegations, which the Court need not credit on this motion. It follows then that the Court will consider only the Unpaid Break Policy allegations.

E. The FLSA Overtime Claim

The Second Circuit has not yet defined a FLSA overtime claim's elements. But several Second Circuit district courts have held that a properly pled FLSA overtime claim must "at least approximately, allege the hours worked, for which wages were not received." Nichols v. Mahoney, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) (internal citations and quotations omitted). Here, the SAC fails this basic test.

As an initial matter, the SAC does not indicate whether Plaintiffs worked full-time, part-time, or somewhere in-between. Instead, the SAC alleges only, in a vague and conclusory fashion, that Plaintiffs work "both under and in excess of forty hours per week." (SAC ¶¶ 165, 175.); Jian Zhong v. August August Corp., 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007) ("mere[] alleg[ation]" that plaintiff sometimes "worked 'beyond 40 hours per week'" did not state FLSA claim). And, presumably, even this statement considers the numbers of hours Plaintiffs expended due to the Unpaid Time and Unpaid Training Policies, which Plaintiffs failed to sufficiently plead. Additionally, the SAC gives no indication concerning the number and length of Plaintiffs' unpaid breaks, or how frequently Plaintiffs perform unpaid work during them. So, based on just the

SAC, there is no way to tell whether Plaintiffs are full-time, 40 hour a week employees, for whom any unpaid break would necessarily push them over the overtime threshold, part-time employees who worked only a few hours each week even after counting unpaid breaks, or something in-between.[5] In this regard, the Court notes that it is not enough for Plaintiffs to plead that they sometimes missed breaks or worked excess hours in a single day. See Acosta v. Yale Club, 94-CV-0888. 1995 U.S. Dist. LEXIS 14881, at *10 (S.D.N.Y. 1995) (dismissing FLSA complaint where plaintiffs "cite various instances when they worked several extra hours in a given day" but did not "offer any examples of situations when management employed them for more than 40 hours in a week without paying them overtime"). Nor is it enough to "merely allege[]" that Plaintiffs worked "beyond forty hours per week." Jian Zhong, 498 F. Supp. 2d at 630. Rather, Plaintiffs must plead facts to render that claim plausible – such as by describing their typical or periodic work and missed break schedule, or by identifying "examples"[6] of when

---

[5] Defendants ask the Court to take judicial notice of the various applicable collective bargaining agreements, many of which define a full work week as less than 40 hours a week. For purposes of this motion, the Court declines to do so. Apparently, the named Plaintiffs all contend that they worked for the Good Samaritan Hospital, and do not expressly identify other Defendants as employers. See Docket No. 114 (Iwasiuk Aff. ¶ 2; Wolman Aff. ¶ 2; Lundy Aff. ¶ 2). And Good Samaritan employees did not operate under a collective bargaining agreement. (Def. Br. at 6-7.)

[6] Acosta, 1995 U.S. Dist. LEXIS 14881, at *10.

they exceeded the overtime threshold, or by one of many other possible methods.

Accordingly, the Court finds that Plaintiffs have not plausibly stated an FLSA overtime claim. This claim is DISMISSED WITHOUT PREJUDICE.

F. Gap Time Claim

Fairly construed, Plaintiffs also appear to allege a "gap time" claim. A gap time claim seeks backpay for unpaid work performed below the overtime threshold. See Conzo v. City of New York, 667 F. Supp. 2d 279, 282-84 (S.D.N.Y. 2009).

With respect to weeks in which Plaintiffs did not work overtime, the Second Circuit has expressly held that the FLSA does not permit a gap time claim, provided that the employee's average wage still exceeds the statutory minimum. See U.S. v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir. 1960) (denying petition for rehearing); Conzo, 667 F. Supp. 2d at 284 (understanding Klinghoffer Bros. as holding that "an employee cannot state a [gap time] claim under the FLSA if her average wage, for a period in which she worked no overtime, exceeds the minimum wage"). After all, if an employee's average wage exceeds the minimum, then no minimum wage violation has occurred. See 29 U.S.C. § 206. And "[l]ogically, in pay periods without overtime, there can be no violation of [29 U.S.C. § 207] which regulates

overtime payment." Monahan v. County of Chesterfield, 95 F.3d 1263, 1280 (4th Cir. 1996).

It is less clear whether gap time claims are cognizable when an employee actually works overtime. The FLSA itself requires only payment of minimum wages and overtime wages. See 29 U.S.C. §§ 201-219. So nothing in the statutory text prevents employers from requiring employees to work some hours below the overtime threshold for "free," provided that the employees' average wage exceeds the minimum. See Klinghoffer Bros. Realty Corp., 285 F.2d at 494 (a pay plan "does not become illegal merely because it takes the form of additional hours worked without compensation, rather than of an express reduction of the hourly rate"). But most courts have nevertheless recognized gap time claims if: (i) an employee exceeds the overtime threshold; and (ii) the employment contract does not expressly or implicitly compensate the employee for all non-overtime hours.[7] Generally, these courts have adopted the Department of Labor's reasoning, as codified in 29 C.F.R. §§ 778.315, 778.317, that overtime compensation "cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract

---

[7] See, e.g., Monahan, 95 F.3d at 1279; Conzo, 667 F. Supp. 2d at 286; Wright v. Pulaski County, 09-CV-0065, 2010 U.S. Dist. LEXIS 87283, at *26-28 (E.D. Ark. Aug. 24, 2010); Valcho v. Dallas County Hosp. Dist., 658 F. Supp. 2d 802, 811 (N.D. Tex. 2009); Koelker v. Mayor of Cumberland, 599 F. Supp. 2d 624, 635 (D. Md. 2009); Barvinchak v. Ind. Reg'l Med. Ctr., 06-CV-0069, 2007 U.S. Dist. LEXIS 72805, at *18 (W.D. Pa. Sept. 28, 2007).

13

(express or implied) or under any applicable statute has been paid," and that "[a]n agreement not to compensate employees for certain nonovertime hours [is impermissible] since it would have the same effect of diminishing the employee's total overtime compensation."

A few other courts have disagreed, and concluded that gap time claims are never cognizable.[8]  In light of the FLSA's plain text (which recognizes no such claim), the Second Circuit's reasoning in Klinghoffer Bros. Realty Corp.,[9] and the potential for

---

[8]  Braddock v. Madison County, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998); see also Farris v. County of Riverside, 667 F. Supp. 2d 1151, 1162 (C.D. Cal. 2009) (appearing to not recognize a gap time claim under any circumstances); Arnold v. City of Fayetteville, Ark., 910 F. Supp. 1385, 1394 (E.D. Ark. 1995) (expressing "doubt about the authority of the Secretary, by regulation, to extend federal court jurisdiction beyond that clearly created by the statute," but deferring resolution of the ultimate question).

[9]  Specifically, § 778.317 reasons that an agreement to work unpaid hours below the overtime threshold has the "effect of diminishing the employee's total overtime compensation."  But, as noted above, Klinghoffer Bros. Realty Corp. thought differently.  It viewed an agreement to work unpaid hours as one way to contractually lower straight-time (not overtime) compensation, except that hourly pay declines through unpaid hours, instead of "an express reduction of the hourly rate." 285 F.2d at 494.

bizarre consequences,[10] this Court has serious concerns about the majority view, even after considering the applicable regulations.

But the Court need not formally adopt either approach now. For, as noted above, even the majority view does not recognize gap time claims when the applicable "employment contract provides compensation for all non-overtime hours." Conzo, 667 F. Supp. 2d at 287. And here, Plaintiffs allege precisely that. Specifically, Plaintiffs allege that they worked under "express oral contracts" and "implied contacts" that guaranteed them pay for "all hours worked," at a "set rate of pay, with a set work schedule." (SAC ¶¶ 135, 141, 142.) Given these allegations, Plaintiffs' FLSA gap time claims cannot survive.[11] Consequently, they are DISMISSED WITH PREJUDICE.

III. RICO Claims

The SAC also attempts to dress up Defendants' pay policies as RICO violations. (SAC ¶¶ 96-112, 187-189.) In this

---

[10] Namely, by recognizing gap time claims only in weeks when overtime occurs, the majority rule effectively imposes an extremely high marginal pay rate on the hour past the overtime threshold. If, for example, an employee subject to a 40 hour overtime threshold earns $20/hr for the first 30 hours but nothing for hours 30 to 40, then, under the majority rule, he is owed $0 for weeks when he works 40 hours, but $230 for working just 1 extra hour a week ($200 for 10 gap time hours, plus $30 for 1 overtime hour). Such a result is odd, inexplicable, and directly conflicts with the statutory text, which requires employers to pay only "one and one-half times the regular rate" for that single overtime hour. 29 U.S.C. § 207(a)(2).

[11] These allegations may, however, support a breach of contract or unjust enrichment claim.

regard, the SAC contends that Defendants engaged in mail fraud, and thus racketeering, because they mailed "false and deceptive" pay stubs. (SAC ¶ 100.)

Plaintiffs' RICO claims fail on numerous grounds. But, chiefly, Plaintiffs fail to allege any pattern of racketeering activity. See DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). Plaintiffs attempt to meet this requirement by alleging mail fraud. But, to be actionable, a purportedly false or deceptive mailing must further the alleged fraudulent scheme. See United States v. Maze, 414 U.S. 395, 403, 94 S. Ct. 645, 38 L. Ed. 2d 603 (1974). And here, Plaintiffs allegations that the pay stubs furthered the supposed scheme are not just implausible, they are illogical.

Plaintiffs contend that the pay stubs "misled Plaintiffs and Class Members about the amount of wages to which they were entitled, the number of hours which they had worked, and whether defendants had included all compensable work time." (SAC ¶ 100.) But Plaintiffs do not allege that they suffer from anterograde amnesia, or otherwise lack the capacity to retain short-term memories. So they should have recalled how much they actually worked in a given work. Thus, to the extent that the mailed pay stubs differed from Plaintiffs' recollection, that difference did not "conceal" the fraudulent scheme. Quite the opposite: it should have placed Plaintiffs on notice that Defendants were not fully

paying them for their work. As the District of Massachusetts stated, in dismissing substantively identical claims:

> Although [plaintiffs] argue that the paychecks concealed from [them] that they were not being paid for all the time they worked, they concede that the paychecks reported the actual number of hours for which they were paid. As defendants aptly note, [i]f the paychecks informed [p]laintiffs that they were paid for fewer hours than they allegedly worked, that information would serve to expose, not further, the alleged fraud. Consequently, the use of the mail was not in furtherance of the allegedly fraudulent scheme, and plaintiffs have failed to state a § 1962(c) RICO cause of action for mail fraud.

See Cavallaro v. UMass Memorial Health Care Inc., 09-CV-40152, 2010 WL 3609535, at *3 (D. Mass. July 2, 2010).

The Court could not agree more. Plaintiffs' RICO claims are DISMISSED WITH PREJUDICE.

IV. Remaining Claims

The SAC raises both federal and New York state law claims. Under Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's "early stages." See also 28 U.S.C. § 1367(c)(3). As discussed above, the Court has dismissed all of Plaintiffs' federal claims. Accordingly, the Court declines to exercise supplemental

17

jurisdiction over Plaintiff's state law claims, and DISMISSES them WITHOUT PREJUDICE on this basis. See Carnegie-Mellon University, 484 U.S. at 350. And, because it dismisses under Carngie-Mellon University, it does not opine regarding which, if any, of Plaintiffs' state law claims are otherwise properly pled.

V. Leave to Amend

In opposing this motion to dismiss, Plaintiffs sought leave to amend in the event that the Court decided to dismiss their claims. (Pl. Opp. Br. at 4.) Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court agrees that the defects in Plaintiffs' FLSA overtime claims are potentially curable. And, if Plaintiffs successfully plead a viable FLSA claim, they may also be able to properly plead certain state law claims. Accordingly, the Court GRANTS Plaintiffs leave to file a Third Amended Complaint for the purposes of validly stating an FLSA overtime claim, along with any viable supplemental state law claims.

That being said, the Court cautions Plaintiffs that any such Third Amended Complaint should contain significantly more factual detail concerning who the named Plaintiffs are, where they worked, in what capacity they worked, the types of schedules they typically or periodically worked, and any collective bargaining agreements they may have been subject to. Likewise, to the extent that Plaintiffs seek to rely upon the Unpaid Time or Unpaid

18

Training Policies, Plaintiffs should – consistent with this opinion – plead enough factual detail concerning this unpaid time and training to render their allegations plausible. The Court will not be impressed if the Third Amended Complaint prattles on for another 217 paragraphs, solely for the sake of repeating various conclusory allegations many times over.

CONCLUSION

Plaintiffs' FLSA claims are DISMISSED. The FLSA claims predicated on an overtime theory are DISMISSED WITHOUT PREJUDICE. The FLSA claims predicated on a gap time theory are DISMISSED WITH PREJUDICE. The RICO claims are DISMISSED WITH PREJUDICE. All remaining claims are DISMISSED WITHOUT PREJUDICE.

The Court GRANTS Plaintiffs' request for leave to file a Third Amended Complaint. Plaintiffs have thirty (30) days to file such a Third Amended Complaint. However, as of now, all claims are DISMISSED. Thus, all pending motions [see Docket Nos. 112, 117] are DENIED AS MOOT.

If Plaintiffs fail to file a Third Amended Complaint within thirty (30) days, the Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
December  30 , 2010