UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PATRICIA WOLMAN, ET AL.,

               Plaintiff,          MEMORANDUM & ORDER
                                                   10-CV-1326 (JS)(ETB)
  - against -

CATHOLIC HEALTH SYSTEM OF LONG ISLAND,
INC., ET AL.,

               Defendants.
----------------------------------------X
APPEARANCES:

For Plaintiffs:      Justin Michael Cordello, Esq.
                    James Nelson Thomas, Esq.
                    Jessica Lynne Witenko, Esq.
                    Michael J. Lingle, Esq.
                    Peter John Glennon, Esq.
                    Thomas & Solomon LLP
                    693 East Avenue
                    Rochester, NY 14607

For Defendants:      James E. McGrath , III, Esq.
                    Adriana Stefanie Kosovych, Esq.
                    Michael T. McGrath, Esq.
                    Michael Christopher Moon, Esq.
                    Randi Brooke Feldheim, Esq.
                    Putney, Twombly, Hall & Hirson LLP
                    521 Fifth Avenue
                    10th Floor
                    New York, NY 10175

SEYBERT, District Judge:

        On December 30, 2010, the Court granted Defendants' motion to dismiss Plaintiffs' Second Amended Complaint, but afforded Plaintiffs the opportunity to replead most of their

1

claims.[1] On January 29, 2011, Plaintiffs filed a Third Amended Complaint ("TAC"), which Defendants have again moved to dismiss.

The Court does not yet reach Defendants' motion. Instead, for the reasons discussed below, and upon carefully reviewing the TAC, the Court has decided to sua sponte order both supplemental briefing and a more definitive statement.

DISCUSSION

This opinion assumes familiarity with most of Plaintiffs' underlying allegations, which the Court set forth in more detail in its December 30th Order. In brief, Plaintiffs Patricia Wolman, Kelly Iwasiuk, and Dennis Lundy ("Plaintiffs") commenced a putative class action alleging that Defendants[2] failed to pay them for all hours they worked. To that end, Plaintiffs assert statutory claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), along with a host of common law claims.

---

[1] See Wolman v. Catholic Health System of Long Island, 10-CV-1326, 2010 WL 5491182, 2010 U.S. Dist. LEXIS 137392 (E.D.N.Y. Dec. 30, 2010).

[2] For purposes of this opinion, "Defendants" means all defendants named in the TAC: Catholic Health System of Long Island Inc., d/b/a Catholic Health Services of Long Island, Good Samaritan Hospital Medical Center, Mercy Medical Center, New Island Hospital a/k/a St. Joseph Hospital, St. Catherine of Siena Medical Center, St. Charles Hospital and Rehabilitation Center, St. Francis Hospital, Roslyn, New York, Our Lady of Consolation Geriatric Care Center, Nursing Sisters Home Care d/b/a Catholic Home Care, and James Harden. The Court's use of this nomenclature does not mean that it will ultimately find, when addressing Defendants' motion to dismiss, that all these entities are proper parties to this litigation.

2

A.  FLSA & NYLL Claims

Plaintiffs' statutory claims arise, largely, out of Defendants' timekeeping policies. Plaintiffs allege that Defendants' "timekeeping system automatically deducts time from employees' paychecks each day for meals, breaks and other reasons." (TAC ¶ 58.) But, despite these automatic deductions, Plaintiffs claim that Defendants frequently required them to work during meals and breaks (hereafter, "Unpaid Break Policy"). (TAC ¶¶ 59-75.) And Plaintiffs further allege that Defendants' "policies, practices and/or time recording system" "failed to pay" them for time they worked "before and/or after the end of their scheduled shifts" (hereafter, "Unpaid Time Policy"). (TAC ¶¶ 81-82.)³

Plaintiffs rightfully concede that Defendants' default timekeeping policies are not per se labor law violations. (See Pl. Opp. Br. at 6-7.) This is because, standing alone, an employer policy providing automatic deductions for meal breaks does not violate the FLSA.⁴ And, likewise, no authority suggests that the FLSA prohibits employers from initially recording time based on an

---

³ As discussed elsewhere in this opinion, Plaintiffs also allege unpaid training and meeting time. (TAC ¶¶ 89-96.) Plaintiffs do not, however, expressly connect this allegedly unpaid time to Defendants' timekeeping policies.

⁴ See, e.g., Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009); Frye v. Baptist Memorial Hosp., Inc., 2011 WL 1595458, at *9 (W.D. Tenn. 2011); Wage and Hour Div., U.S. Dep't of Labor Fact Sheet No. 53, The Health Care Industry and Hours Worked (July 2009) (available at http://www.dol.gov/whd/regs/compliance/whdfs53.pdf).

3

employee's scheduled shifts, rather than through a punch-in, punch-out time-clock.

For their part, Defendants concede that, if an employee works through a lunch break, that time is compensable - regardless of whether a timekeeping system would ordinarily deduct that time. (Def. Br. at 5-7.) And, likewise, Defendants do not dispute that they must pay employees for off-shift principal work activities that they suffer or permit. (Def. Br. at 8.)

Rather, as the Court understands it, the parties' legal dispute is two-fold. **First**, Plaintiffs appear to argue that Defendants' alleged timekeeping policies, while not per se illegal, violate the FLSA as applied to Plaintiffs, because the nature of their positions rarely affords them a bona fide meal period, or a firm beginning and end to a shift. In this regard, Plaintiffs allege that, "given the demands of the health care industry and short staffing," Defendants "do not ensure" that they "perform no work during the breaks," and, in fact, "expect" them to be available to work at all times, resulting in Plaintiffs "often" receiving no break. (TAC ¶¶ 59-72.) This theory requires no more factual specificity under Iqbal/Twombly. And it is, at the least, colorable - regardless of whether Defendants afford Plaintiffs a way to get paid for a missed break or off-shift hours. The Department of Labor, for instance, has opined that "[w]hen choosing to automatically deduct 30-minutes per shift, the employer must

4

ensure that the employees are receiving the full meal break," thereby implicitly suggesting that automatic deductions should not be used when an employer cannot "ensure" that employees actually get their break. But, though colorable, the Court is not sure if this theory is ultimately meritorious. For the Court located at least some authority to the contrary. Frye v. Baptist Memorial Hosp., 07-CV-2708, 2010 WL 3862591, at *7 (W.D. Tenn. Sep. 27, 2010) (no FLSA violations where hospital "shift[ed] the burden" to employees by requiring them to take "affirmative action" to cancel automatic meal break deduction). The Court notes, however, that the parties did not brief this issue (hereafter, the "As Applied Theory") thoroughly, and might want that opportunity before the Court rules. Consequently, as ordered below, the Court seeks supplemental briefing on this issue.

**Second**, Plaintiffs appear to argue that - even if there is nothing intrinsically wrong with Defendants' timekeeping policies -- Defendants violated the FLSA by wrongly telling their employees that they could not receive compensation for work performed during breaks, or off-shift. In this regard, Plaintiffs allege that "[w]hen questioned by employees about the Meal and Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid," and that Plaintiffs had these conversations with Defendants "on a number of occasions." (TAC ¶

5

74.) Likewise, with respect to the Unpaid Time Policy, Plaintiffs allege that "employees were not allowed to record [time] to be compensated for work, typically before and after scheduled shifts." (TAC ¶ 83.) And, even more generally, Plaintiffs allege that "the defendants falsely assured Plaintiffs and Class Members that . . . the defendants were ensuring that they were properly paying the Plaintiffs and Class Members," and that Defendants "made this representation" knowing it to be "false." (TAC ¶¶ 128, 129); (see also TAC ¶ 101 ("by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time."))

The Court initially found that these factual allegations sufficed to meet the Iqbal/Twombly "plausibility" standard. 2010 WL 5491182 at *2, 2010 U.S. Dist. LEXIS 137392 at *6 (allegations that "management directed them to work during break times, and that management rejected their efforts to obtain compensation for this work" met pleading standard). But, as applied to the TAC, with its new allegations, the Court's prior holding no longer controls.

To begin with, Plaintiffs define "Defendants" as twelve separate entities and one individual. But Plaintiffs now concede that they worked for only one of these entities, Good Samaritan Hospital. (TAC ¶¶ 52-54.) Given this admission, the Court can no longer accept as true Defendants bald allegation that "Defendants,"

collectively, told them anything, much less misrepresented to them that they could not receive pay for missed breaks or off-shift work. See Agu v. Rhea, 09-CV-4732, 2010 WL 5186839, at *6, 2010 U.S. Dist. LEXIS 132706, at *17 (E.D.N.Y. Dec. 15, 2010) (court need not accept as true allegations that are "contradicted by facts that can be judicially noticed or by other allegations" in a complaint) (internal citations and quotations omitted). It follows then that, if the Court ultimately rejects the As Applied Theory, Plaintiffs have not yet pled sufficient facts to support FLSA liability under a theory that Defendants affirmatively refused Plaintiffs compensation for missed breaks and off-shift work.

That being said, the Court does not believe that it would serve anyone's interest to enter another dismissal without prejudice, which would be followed almost assuredly by another amended complaint and then a full round of Rule 12(b)(6) briefing. Instead, the Court considers it more appropriate to sua sponte direct Plaintiffs to file a more definite statement, which it will then use to judge the sufficiency of the TAC. See Straker v. Metropolitan Transit Authority, 333 F. Supp. 2d 91, 103 (E.D.N.Y. 2004) (sua sponte ordering more definite statement). In this regard, the Court notes that Plaintiffs have expressly represented to the Court that they had "conversations," "on a number of occasions," in which they were told that they "were being fully paid for the work time for which they were entitled to be paid,"

7

but they don't plead who, specifically, they had those conversations with. (TAC ¶¶ 73, 74.) Similarly, Plaintiffs claim that they were not "allowed" to record time to be compensated for off-shift work, but provide no factual explanation for this belief. (TAC ¶ 83.) And many other allegations are similarly vague.

There is no reason for this obscurity, because all (or nearly all) of the relevant information is wholly within Plaintiffs' possession; it is not information that Plaintiffs would obtain through discovery. See Wolman, 2010 WL 5491182, at *3 n. 3, 2010 U.S. Dist. LEXIS 137392, at *8 n. 3. Plaintiffs should know, or have a reasonably good idea about, who they spoke with "on a number of occasions." Plaintiffs should know why they believe they were not "allowed" to record off-shift time (i.e., a specific manager forbid or discouraged them from recording such time, the computer system precluded entering this time, etc.). And Plaintiffs should know, or have a reasonably good idea about, who, specifically, "deliberately misrepresented" to them that "they were being properly paid for all compensable time." (TAC ¶ 101.)

If Plaintiffs, in fact, have valid claims, they gain nothing from hiding the ball now. For Plaintiffs will eventually have to disclose this information during discovery. And, the earlier Plaintiffs disclose it, the faster discovery can move, and the quicker Plaintiffs can potentially obtain relief.

8

Alternatively, if Plaintiffs' allegations lack a solid factual basis, then exposing this deficiency now will save everyone substantial litigation costs. And, if the Court ultimately dismisses the TAC, a more definitive statement will afford the Second Circuit a much clearer record on appeal.

Additionally, another of the Court's concerns supports this course of action. As the Court's original opinion recognized, the Iqbal/Twombly plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 2010 WL 5491182 at *1, 2010 U.S. Dist. LEXIS 137392 at *3 (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)). Here, as the Court now better understands, the relevant "context" is that Plaintiffs' counsel have filed the same boilerplate complaint in over a dozen other actions, with each complaint containing the same word-for-word allegations regarding what the defendants supposedly told the plaintiffs, and what kinds of "conversations" they had.[5] But the Iqbal/Twombly plausibility standard requires, at a minimum, factual allegations particular to

---

[5] See, e.g., DaSilva v. North Shore-Long Island Jewish Health Care, Inc., 10-CV-1341, Docket No. 143 (E.D.N.Y.); Sampson v. Medisys Health Network Inc., 10-CV-1342, Docket No. 16 (E.D.N.Y.); Taylor v. Pittsburgh Mercy Health System, Inc., 09-CV-377 (W.D. Pa.); Nakahata v. New York-Presbyterian Healthcare System, Inc., 10-CV-2661, 2011 WL 321186, at *1 n. 1 (S.D.N.Y. Jan. 28, 2011) (identifying "the same boilerplate complaint" in eight other actions, a tally that does not include this case, DaSilva, Sampson, or Taylor).

each named Plaintiff, and which reflect that Plaintiff's own personal experiences. It is not enough to simply parrot, word-for-word, the "vague and conclusory allegations" used "in more than a dozen actions." Nakahata, 2011 WL 321186 at *6. On the contrary, what Plaintiffs have done "is a vivid demonstrative of how not to plead." Id.

Consequently, the Court hereby directs Plaintiffs to provide a more definite statement as to their FLSA and NYLL claims. This more definite statement should provide the following information:

1. For each named Plaintiff, state what specific persons or documents (to the best of that Plaintiff's knowledge): (i) "affirmatively stated" that "employees were being fully paid for the work time for which they were entitled to be paid"; (ii) "deliberately misrepresented" that employees "were being properly paid for all compensable time"; (iii) "made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' rights"; and (iv) "when questioned," "falsely assured [that Plaintiff] . . . that they were properly paying the Plaintiffs and Class Members." (TAC ¶¶ 73, 74, 101, 102, 128, 129.) In responding to this inquiry, the more definite statement should endeavor to present the basic context of these alleged statements. And it should also set forth whether Plaintiffs ever received different information from other persons or documents.

2. For each named Plaintiff, set forth the factual basis for the allegation that the Plaintiff was "not allowed" to record or receive compensation for off-shift hours. (TAC ¶ 83.) Did each named Plaintiff learn this from a written document? If not, who, to the best of that Plaintiff's knowledge, discouraged or forbid them from recording their off-shift time?

10

> 3. For each named Plaintiff, did anyone (or any document) tell them that they could not receive compensation for the alleged unpaid mandatory meetings and training time, or discourage them from seeking such compensation? If not, were they aware of any procedure to receive compensation for this time?

B.  Common Law Claims

Because it dismissed all federal claims, the Court's December 30th opinion did not analyze Plaintiffs' common law claims. But, the Court notes, many of these allegations suffer from the same pleading deficiencies as Plaintiffs' statutory claims.

For instance, Plaintiffs allege that they entered into "binding, express oral contracts" that required Defendants to compensate them for "all hours worked." Compl. ¶¶ 142-146. And Plaintiffs also claim that "from time to time, these contracts were memorialized in writing." Comp. ¶¶ 141, 155. But Plaintiffs plead no facts to support these bald, conclusory allegations. For instance, Plaintiffs do not identify who, on Defendants behalf, supposedly entered into these "binding, express oral contracts,"or when these contracts were formed. Nor do Plaintiffs indicate when the alleged written contracts were signed, or quote their alleged terms – much less attach them to the TAC. In so doing, Plaintiffs fail to provide Defendants with even the basic information they'd need to ascertain what contracts Plaintiffs are talking about, and see what defenses, if any, are appropriate. See DeSilva v. North

11

Shore-Long Island Jewish Health System, Inc., 10-CV-1341, 2011 WL 899296, at *27 (E.D.N.Y. Mar. 16, 2011) (finding that substantively identical contractual allegations failed to state a claim).

Plaintiffs' common law fraud claims are similarly vague. Plaintiffs claim that Defendants made various fraudulent statements through their "agents," "corporate publications," "employee manuals," and "policy manuals." (TAC ¶¶ 175, 176.) But Plaintiffs make no effort to identify the specific offending statements. Nor do Plaintiffs indicate who these "agents" were, or what "publications" and "manuals" they are referring to. Finally, Plaintiffs do not reference when these statements were made. Thus, were the Court addressing Plaintiffs' common law fraud claim now, it would dismiss it for woefully failing to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard. See Moody v. Morris, 608 F. Supp. 2d 575, 582 (S.D.N.Y. 2009) (a common law fraud claim must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent).

Fortunately for Plaintiffs, the Court is not yet in a position to address their common law claims, because it must first satisfy itself that a federal claim exists. Thus, in their more definite statement, Plaintiffs may choose to augment their common law claims with additional factual allegations. Alternatively, if

Plaintiffs cannot identify such facts, they should inform the Court that they are voluntarily discontinuing those claims. See generally Fed. R. Civ. P. 11(b).

## CONCLUSION

Within seven (7) days from this Order, Plaintiffs are directed to file a more definite statement consistent with this Order. As all this information should already be in Plaintiffs' possession the Court sees no reason to afford Plaintiffs more time.

Within fourteen (14) days from this Order, Plaintiffs and Defendants may submit simultaneous supplemental briefs addressing the As Applied Theory, and any new allegations contained in the more definite statement. This supplemental briefing should not exceed twenty (20) pages.

SO ORDERED.

/s/ Joanna Seybert
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
May 5, 2011