UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PATRICIA WOLMAN, KELLY IWASIUK, and
DENNIS LUNDY, on behalf of themselves
and all other employees similarly
situated,                                        MEMORANDUM & ORDER
                                                 10-CV-1326(JS)(ETB)

                        Plaintiffs,


            -against-


CATHOLIC HEALTH SYSTEM OF LONG ISLAND,
INC. d/b/a CATHOLIC HEALTH SERVICES
OF LONG ISLAND, GOOD SAMARITAN HOSPITAL
MEDICAL CENTER, MERCY MEDICAL CENTER,
NEW ISLAND HOSPITAL a/k/a ST. JOSEPH
HOSPITAL, ST. CATHERINE OF SIENA MEDICAL
CENTER, ST. CHARLES HOSPITAL AND
REHABILITATION CENTER, ST. FRANCIS
HOSPITAL, ROSLYN, NEW YORK, OUR LADY OF
CONSOLATION GERIATRIC CARE CENTER,
NURSING SISTERS HOME CARE d/b/a CATHOLIC
HOME CARE, and JAMES HARDEN,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:          James Nelson Thomas, Esq.
                         Jessica Lynne Witenko, Esq.
                         Michael J. Lingle, Esq.
                         Peter John Glennon, Esq.
                         Justin Michael Cordello, Esq.
                         Thomas & Solomon LLP
                         693 East Avenue
                         Rochester, NY 14607


For Defendants:          James E. McGrath, III, Esq.
                         Adriana Stefanie Kosovych, Esq.
                         Daniel F. Murphy, Esq.
                         Mark A. Hernandez, Esq.
                         Mary Ellen Donnelly, Esq.
                         Randi Brooke Feldheim, Esq.
                         Putnam, Twombly, Hall & Hirson LLP
                         521 Fifth Avenue, 10th Floor
                         New York, NY 10175

Joseph A. Carello, Esq.
Stephen Jones, Esq.
Todd R. Shinaman, Esq.
Nixon Peabody LLP
1300 Clinton Square
Rochester, NY 14604

SEYBERT, District Judge:

Plaintiffs Patricia Wolman ("Wolman"), Kelly Iwasiuk ("Iwasiuk"), and Dennis Lundy ("Lundy," collectively the "Lead Plaintiffs"), commenced this putative class action against Defendants[1] asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., and various state common law claims. Pending before the Court is Defendants' motion to dismiss the Fourth Amended Complaint ("FAC"). For the following reasons, the motion to dismiss is GRANTED.

<u>BACKGROUND</u>

Although the FAC is over forty pages long, the majority of its 246 paragraphs are mere "threadbare recitals of the elements of a cause of action, supported by conclusory statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937,

---

[1] Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island ("CHS"), Good Samaritan Hospital Medical Center ("Good Samaritan"), Mercy Medical Center, New Island Hospital a/k/a St. Joseph Hospital, St. Catherine of Siena Medical Center, St. Charles Hospital and Rehabilitation Center, St. Francis Hospital, Roslyn, New York, Our Lady of Consolation Geriatric Care Center, Nursing Sisters Home Care d/b/a Catholic Home Care, and James Harden ("Harden," collectively "Defendants").

1949, 173 L. Ed. 2d 868 (2009). Such conclusory allegations are "not entitled to the assumption of truth" in deciding a motion to dismiss, and, accordingly, the Court will not consider them. As this is the Court's third's opinion addressing the sufficiency of Plaintiffs' claims, the Court assumes familiarity with most of Plaintiffs' underlying allegations and will address only those facts that are new to the FAC.

As the Court previously stated, the factual basis for Plaintiffs' claims are actually very simple: Plaintiffs assert that Defendants did not compensate them for all time worked. In this regard, Plaintiffs complain about three aspects of Defendants' work and pay policies: (1) that Defendants automatically deducted meal periods from Plaintiffs' compensation even though they were frequently required to work during their meal breaks (FAC ¶¶ 69-100); (2) that Defendants "suffered or permitted" Plaintiffs to work before and/or after their scheduled shifts without compensation (FAC ¶¶ 101-128); and (3) that Defendants failed to compensate Plaintiffs for attending training programs (FAC ¶¶ 129-146).

I.  Claims in FAC

The FAC purports to assert claims for unpaid wages on behalf of the Lead Plaintiffs--all of whom work or have worked at Good Samaritan--and a purported class of up to 15,000

individuals employed by Good Samaritan and the other Defendant healthcare facilities.[2]

A.   <u>Lead Plaintiffs' Individual Claims</u>

    1.   <u>Wolman</u>

Wolman was employed by Good Samaritan as a respiratory therapist from 1983 through August 2009. According to the FAC, Wolman was "typically" scheduled to work from 7:00AM through 8:00PM, minus a half hour lunch break, three days a week, totaling 37.5 hours for which she was properly compensated. (FAC ¶ 56.) In addition to her scheduled shifts, she alleges that her meal breaks were "typically" missed or interrupted and that she would "typically" work fifteen minutes "before her scheduled start time in order to prepare her assignments." (FAC ¶ 56.) Thus, in a "typical" week, Wolman worked an additional two hours and fifteen minutes without compensation, or a total of 39.75 hours. One week per month, Wolman was required to attend a mandatory staff meeting, which lasted approximately thirty minutes, for which she was not compensated, and each year she earned, on average, ten hours of respiratory therapy credits. She also "occasionally" picked up an additional 12.5 hour shift or worked a longer shift for which she was properly

---

[2] Plaintiffs assert that Defendants, through CHS, "comprise a single, integrated enterprise," that operates an "integrated healthcare system." (FAC ¶¶ 25, 27.) Defendant Harden is the President, Chief Executive Officer ("CEO"), and Director of CHS. (FAC ¶ 45.)

compensated. (FAC ¶ 56.) Wolman was not subject to a collective bargaining agreement ("CBA") while employed at Good Samaritan.

The FAC does not assert that Wolman ever sought to cancel the automatic meal deduction or formally report the additional uncompensated time worked. However, it does state that Wolman asked her manager, Jim O'Connor, why she was not being compensated for the work performed during meal breaks or for attending mandatory staff meetings "several times" over the course of her twenty-six years at Good Samaritan and was told that "such time did not have to be compensated." (FAC ¶ 57.)

## 2. Iwasiuk

Iwasiuk was employed by Good Samaritan as a registered nurse from August 2007 through March 2009. According to the FAC, Iwasiuk was "typically" scheduled to work from 8:00AM through 4:00PM, minus a half hour lunch break, four days a week, totaling thirty hours for which she was properly compensated. (FAC ¶ 58.) Approximately twice a month, Iwasiuk worked an extra one or two 7.5 hour shifts for which she was properly compensated. (FAC ¶ 58.) In addition to her scheduled shifts, she alleges that her meal breaks were "typically" missed or interrupted and that she would "typically" work thirty minutes "before her scheduled start time in order to prepare her assignments or read report [sic]" and up to two hours after her

scheduled shift "writing and uploading reports." (FAC ¶ 58.) Iwasiuk was also never a party to a CBA during her time at Good Samaritan. (FAC ¶ 58.)

Iwasiuk asserts that she tried recording the additional hours worked "but the defendants wrote that she could not be paid for such time." (FAC ¶ 59.) Iwasiuk allegedly followed up with Cindy Dodenhoff, her direct supervisor, and Donna Roberto, the Director of Nursing, regarding Defendants' decision not to compensate her for working during meal breaks and before and after her scheduled shift and was told that "this time was not compensable." (FAC ¶ 59.) She first spoke to Ms. Dodenhoff and Ms. Roberto in early fall 2007 and recalls having at least ten subsequent conversations with them regarding the compensation policies. (FAC ¶ 59.) In 2008, she spoke with Mary Ellen Polit[3] "regarding her unpaid work" and was told "that the defendants did not need to pay for that time, and she needed to get her work done in a more timely fashion." (FAC ¶ 59.)

3.  Lundy

Lundy worked as a registered nurse for Good Samaritan from January 2009 through December 2009. (FAC ¶ 60.) He was not employed directly by Good Samaritan, but rather he was placed there by a nurse referral agency. (FAC ¶ 61.) According

---

[3] The FAC does not state who Ms. Polit is, where she works, or what her role is at any of the Defendant healthcare facilities.

to the FAC, Lundy was "typically" scheduled to work at Good Samaritan from 11:00PM to 7:00AM, minus a half hour lunch break, three days a week, totaling 22.5 hours for which he was properly compensated. (FAC ¶ 60.) In addition to his scheduled shifts, he alleges that his meal breaks were "typically" missed or interrupted and that he would "typically" work thirty minutes "before his scheduled start time in order to receive report [sic] from previous shift and prepare for the shift" and thirty minutes after each shift to "finish charting, give report [sic], work with patients, deal with an unexpected procedure, speak with a family or meet with a supervisor." (FAC ¶ 60.) This post-shift work "at times" lasted as long as three hours. (FAC ¶ 60.) Lundy was also required to attend staff meetings, which lasted approximately thirty minutes, for which he was not compensated. (FAC ¶ 60.) The FAC does not specify how often these staff meetings occurred. Lundy also "occasionally" picked up an additional shift for which he was properly compensated. (FAC ¶ 60.) He was not subject to a CBA during his time at Good Samaritan. (FAC ¶ 60.)

Lundy asserts that he recorded the additional hours worked "but the defendants wrote that [he] was not entitled to compensation for the work he recorded." (FAC ¶ 61.) Lundy allegedly followed up with the Director of Nursing regarding Defendants' decision not to compensate him for the additional

time worked, and he was told that "defendants did not need to pay for all meal breaks during which an employee did work, or pay for all times an[] employee decided to work before or after the scheduled shifts," and was advised to "manage his time better." (FAC ¶ 61.) Lundy recalls having at least two subsequent conversations with the Director of Nursing regarding the compensation policies. (FAC ¶ 61.)

B. Class Claims

The Lead Plaintiffs purport to represent a class of all employees of the Defendant healthcare facilities "who were suffered or permitted to work by [D]efendants and not paid their regular or statutorily required rate of pay for all hours worked." (FAC ¶ 62.) They seek to certify two subclasses: one subclass that includes employees who were subject to CBAs and one subclass that includes employees who were not subject to CBAs. (FAC ¶¶ 100, 128, 145.)

II. Defendants' Motions

Defendants seek to dismiss Plaintiffs' FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim. (Docket Entry 193.) Plaintiffs oppose and, in the alternative, seek leave to amend the FAC to properly assert their claims. (Docket Entry 196 at 2.) Defendants also move to strike: (1) an affidavit submitted by Plaintiffs in opposition to the motion to dismiss, and (2) two

8

letters submitted by Plaintiffs providing the Court with supplemental authority. (Docket Entries 202, 214.)

DISCUSSION

## I.   Standard under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Iqbal, 129 S. Ct. at 1949; Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Iqbal, 129 S. Ct. at 1949). Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## II.  FLSA Claims

To state a claim for a violation of the FLSA, Plaintiffs must adequately plead that: (1) Plaintiffs were employed by Defendants; (2) Defendants are engaged in commerce; and (3) Defendants failed to pay Plaintiffs for compensable hours worked. 29 U.S.C. § 207(a)(1). Defendants do not contest

that they are engaged in commerce. <u>See</u> 29 U.S.C. § 203(s)(1)(B)
(defining engaged in commerce as "engaged in the operation of a
hospital"). Rather, Defendants argue that the FLSA claims must
be dismissed because the FAC failed to sufficiently plead (1) an
employer-employee relationship with all Defendants and (2) that
Plaintiffs performed any compensable work for which they were
entitled to compensation under the FLSA but for which they were
not properly compensated.

    A. <u>Existence of an Employer-Employee Relationship</u>[4]

       For the purposes of identifying the persons or
entities liable for uncompensated wages under the FLSA, the FLSA
defines "employer" to include "any person acting directly or
indirectly in the interest of an employer in relation to an
employee." 29 U.S.C. § 203(d). "This definition is necessarily
a broad one, in accordance with the remedial purpose of the
FLSA," <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 66 (2d Cir.
2003), and it "recognize[s] the possibility of joint employment
for purposes of determining FLSA responsibilities." <u>Barfield v.
N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141 (2d Cir. 2008).

---

[4] "The standards by which a court determines whether an entity is
an 'employer' under the FLSA also govern that determination
under the New York labor law." <u>Hart v. Rick's Cabaret Int'l
Inc.</u>, No. 09-CV-3043, 2010 WL 5297221, at *2 (S.D.N.Y. Dec. 20,
2010) (citing <u>Ansoumana v. Gristede's Operating Co.</u>, 255 F.
Supp. 2d 184, 189 (S.D.N.Y. 2003)). Therefore, the below
analysis applies with equal force to Plaintiffs' NYLL claims.

"To determine whether an entity or an individual is an 'employer' under the FLSA, courts look to the 'economic reality' of the employment relationship instead of a common-law conception of agency." Cavallaro v. UMass Mem'l Health Care Inc., No. 09-CV-40152, 2011 WL 2295023, at *3 (D. Mass. June 8, 2011) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)). First, courts "examine the degree of formal control exercised over a worker," Barfield, 537 F.3d at 143, by considering whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records," Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted). If a court finds that a putative employer does not exercise formal control over a worker, it must then assess whether the entity "nevertheless exercised functional control over a worker," Barfield, 537 F.3d at 143, by considering (1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same

regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work, and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant, see Zheng, 355 F.3d at 72; Barfield, 537 F.3d at 143. No one factor is dispositive, and a court is "free to consider any other factors it deems relevant to its assessment of the economic realities." Zheng, 355 F.3d at 71-72.

Defendants argue that the FAC fails to sufficiently allege facts showing that (1) any Defendant healthcare facility other than Good Samaritan was Plaintiffs' "employer" under the FLSA; (2) Defendant James Harden can be held individually liable as Plaintiffs' "employer" under the FLSA; and (3) Plaintiff Lundy was employed by Good Samaritan. The Court will address each argument in turn.[5]

---

[5] Plaintiffs assert that this analysis is premature because "discovery has not yet been conducted in this case" (Pl. Opp. 20) and argue that the standard when deciding a motion to dismiss is "whether the employer has demonstrated that it could not possibly be deemed Plaintiffs' employer or joint employer" (Pl. Opp. 21). This turns the Iqbal/Twombly standard on its head, which places the burden on Plaintiffs--not Defendants--to plead facts sufficient to state a plausible claim for relief. "Although Plaintiff has not yet had the opportunity for full discovery, the factual allegations in the Amended Complaint must be sufficient to show that the proposed defendants meet the FLSA's definition of 'employer.'" Wood v. TriVita, Inc., No. 08-CV-0765, 2009 WL 2106291, at *3 (D. Ariz. June 22, 2009).

1. <u>Defendant Healthcare Facilities Other than Good Samaritan as "Employer"</u>

The FAC contains, <u>inter</u> <u>alia</u>, the following allegations regarding the entity Defendants: they collectively (1) "operate over 25 health care facilities and centers and employ approximately 15,000 individuals" (FAC ¶ 26); (2) are "touted as an integrated healthcare system, including six hospitals, three nursing homes, a regional home care and a hospice care center" (FAC ¶ 27); (3) have one website that "lists various awards and recognitions for its member institutions" (FAC ¶ 28); (4) have a system-wide approach to measuring patient satisfaction and health care quality (FAC ¶¶ 29-30); (5) have a "centralized system for job postings" (FAC ¶ 35); and (6) utilize an automatic meal-deduction policy (FAC ¶ 69).

These facts, while perhaps establishing some general commonalities between Defendants, do not touch on the central issue: whether Defendants exercised sufficient control over Plaintiffs to be considered their joint employers under the FLSA. <u>See</u> <u>Leber v. Berkley Vacation Resorts, Inc.</u>, No. 08-CV-1752, 2009 WL 2252517, at *5 (D. Nev. July 27, 2009) ("The fact that all Defendants conduct business in the same industry and utilize similar compensation schemes is insufficient to establish joint employer status.").

Plaintiffs' assertions that Defendants are an "integrated enterprise" (FAC ¶ 25), "have common ownership" (FAC ¶ 33), and are "engage[d] in a joint venture" (FAC ¶ 39) are similarly insufficient. See Cannon v. Douglas Elliman, L.L.C., No. 06-CV-7092, 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007) ("[P]leading a joint venture does not trigger joint employer status because it is possible for joint ventures to separately employ different people . . . ."); Hibbs-Rines v. Seagate Techs., L.L.C., No. 08-CV-5430, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009) ("Plaintiff's joint employer allegations are insufficient because they are legal conclusions, not factual allegations. . . . While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege some facts in support of this legal conclusion."); cf. Patel v. Wargo, 803 F.2d 632, 635-36 (11th Cir. 1986) (holding that the finding that entities constitute a single "enterprise" under 29 U.S.C. § 203(r) is separate and distinct from whether an entity is an "employer" under 29 U.S.C. § 203(d)).

Plaintiffs' arguments that these Defendants are liable under agency and alter-ego liability theories also fail. (FAC ¶ 37.) Although it is not clear from the FAC or Plaintiffs' briefing, the Court assumes that Plaintiffs assert these theories in order to hold CHS liable for Good Samaritan's

alleged FLSA violations.  For an agency relationship to exist, Good Samaritan must have had apparent or actual authority to bind CHS.  See Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998) (applying New York law).[6]  For CHS to be held liable as Good Samaritan's alter-ego, CHS must have exercised complete domination and control over Good Samaritan such that Good Samaritan had no will of its own, and such domination and control must have been used to commit a fraud or wrong against Plaintiffs.  See Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1998) (applying New York law).  The FAC conclusorily states that "the component entities implemented the policies as required by [CHS] due to the control [CHS] exercised on them, causing the fraud and wrongs at issue in this case." (FAC ¶ 37.)  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

Therefore, Plaintiffs' FLSA claims against CHS, St. Catherine of Sienna Medical Center, St. Charles Hospital and Rehabilitation Center, St. Francis Hospital, Our Lady of

---

[6] Actual authority arises from a manifestation of consent from principal to agent, and apparent conduct arises out of "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 656 N.Y.S.2d 188, 191, 678 N.E.2d 874 (1997) (internal quotation marks, citation, and emphasis omitted).

Consolation Geriatric Care Center, and Nursing Sisters Home Care
are hereby DISMISSED WITH PREJUDICE.

### 2. Defendant James Harden as "Employer"

Courts also apply the "economic reality" test in
determining whether a corporate officer or director is a joint
employer under the FLSA. See Herman v. RSR Sec. Servs. Ltd.,
172 F.3d 132, 139 (2d Cir. 1999). Thus, whether Harden can be
individually liable depends on whether he exercised sufficient
control over Plaintiffs to be considered their employer. See
Barfield, 537 F.3d at 143.

The FAC contains the following allegations regarding
Harden: (1) he is the President, CEO, and Director of CHS (FAC
¶ 45); (2) his responsibilities include "actively managing
[CHS]" (FAC ¶ 47), "mak[ing] decisions regarding benefits for
the staff" (FAC ¶ 51), and "mak[ing] decisions that concern
defendants' operations and significant functions, including
functions related to employment, human resources, training and
payroll" (FAC ¶ 52); and (3) he was "involved in creating and/or
implementing of the [sic] illegal policies complained of in this
case" (FAC ¶ 53).

The Court finds that these facts fail to state a
plausible claim that Harden is Plaintiffs' employer under the
FLSA. While the FAC does assert that Harden had at least some
control over the Plaintiffs' "method of payment" because he was

involved in creating and implementing the automatic meal-deduction policy, the "economic reality," considering the totality of the circumstances, is that Harden did not "possess[] the power to control the workers in question." Herman, 172 F.3d at 139.

First, the FAC is void of any facts that Harden ever had any direct contact with the Lead Plaintiffs. See Tracy v. NVR, Inc., No. 04-CV-6541L, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks, signing the employee's paycheck or directly hiring the employee." (collecting cases)). In fact, courts will not find individual liability when the relationship between plaintiff-employees and the putative employer is too attenuated, especially when the entity has a significant number of employees. See id. (citing Bravo v. Eastpoint Int'l, Inc., No. 99-CV-9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001)).

Second, the FAC is similarly void of facts that Harden had "operational control" over Good Samaritan. See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) ("Officers and owners of a corporation may be deemed employers under the FLSA where the individual has overall

17

operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." (internal quotation marks and citation omitted)); Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." (internal quotation marks and citation omitted)). While Harden's position and responsibilities as President, CEO, and Director of CHS may support holding Harden individually liable for CHS's FLSA violations, all claims against CHS have been dismissed. The FAC does not contain any facts regarding Harden's role, if any, at Good Samaritan.[7] Therefore, Plaintiffs' FLSA claims against Harden individually are DISMISSED WITH PREJUDICE.

---

[7] For this reason, the two cases cited by Plaintiffs are distinguishable. In both Hinterberger v. Catholic Health, No. 08-CV-380S, 2008 WL 5114258, at *4 (W.D.N.Y. Nov. 25, 2008), and Gordon v. Kaleida Health, No. 08-CV-378S, 2009 WL 4042929, at *4 (W.D.N.Y. Nov. 19, 2009), the district court held that a complaint asserting that individual defendants had "authority to make decisions concerning defendants' operations, including functions related to employment human resources, training, payroll and benefits" stated a plausible claim for individual liability in an FLSA putative class against a group of hospitals. Although that language is nearly identical to the language in the FAC, in both Hinterberger and Gordon, the individual defendants had operational control over an entity against which plaintiffs stated a plausible claim for relief.

3. <u>Good Samaritan as Lundy's "Employer"</u>

Defendants also seek to dismiss Lundy's FLSA claims arguing that he was employed by an agency, not Good Samaritan. (Defs. Mot. 28.)  However, an individual may have more than one "employer" under the FLSA, and the Second Circuit has previously held both a nurse referral agency and the hospital in which it placed its nurses liable as joint employers for FLSA violations. <u>See</u> <u>Barfield</u>, 537 F.3d at 144-49.  Here, the FAC asserts that Lundy performed the duties of a nurse at Good Samaritan's hospital between January and December 2009 and submitted his hours directly to Good Samaritan for compensation.  (FAC ¶¶ 60-61.)  Good Samaritan, in turn, set his weekly schedule and determined which of his recorded hours were compensable.  (FAC ¶¶ 60-61.)  The Court finds that these facts are sufficient for Lundy to state a plausible claim that Good Samaritan was his employer.

B. <u>Liability for Unpaid Wages</u>

To state a claim under the FLSA, Plaintiffs must also establish that the Defendants failed to pay Plaintiffs for compensable hours worked in excess of forty hours in a week. <u>See</u> 29 U.S.C. § 207(a)(1).  Plaintiffs assert that Defendants are liable under the FLSA for implementing an automatic meal deduction policy that shifts the burden to employees to report compensable time worked in addition to the scheduled shift ("As-

Applied Theory") and for unpaid overtime ("Unpaid Overtime Claim"). The Court will address the merits of each in turn.

### 1. As-Applied Theory

The Court previously addressed the applicability of Plaintiffs' "As-Applied" theory in its May 5, 2011 Memorandum and Order, stating that "though colorable, the Court is not sure if this theory is ultimately meritorious." Wolman v. Catholic Health Sys. of Long Island, Inc., No. 10-CV-1326, 2011 WL 1741905, at *1 (E.D.N.Y. May 5, 2011). The Court has reviewed the parties' submissions and briefing on the issue and now conclusively finds that Plaintiffs' As-Applied Theory is without merit.

Plaintiffs' argument is as follows: Defendants cannot legally utilize an automatic meal deduction policy here--regardless of whether Defendants afford Plaintiffs a way to ultimately get paid for uncompensated hours worked--because employees in the healthcare industry are often forced to work through their meal breaks and Defendants do not ensure that their employees are performing no work during their unpaid breaks. (Pl. Opp. 12-13) Plaintiffs' theory is not cognizable for three reasons.

First, automatic meal deduction policies are not per se illegal, see, e.g., Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009); Wage & Hour Div., U.S.

Dep't of Labor Fact Sheet No. 53, The Health Care Industry and Hours Worked (July 2009), and Plaintiffs do not dispute this (Pl. Opp. 13). Therefore, Defendants' adoption of a system that, by default, deducts meal breaks from its employees' compensation does not constitute a policy that violates the FLSA.

Second, contrary to Plaintiffs' assertion, there is no duty to ensure that employees are not working through unpaid meal breaks, and employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break. See Frye v. Baptist Mem'l Hosp., Inc., No. 07-CV-2708, 2010 WL 3862591, at *7 (W.D. Tenn. Sept. 27, 2010) (describing the burden shifting as a "natural consequence of any employer's adopting an automatic deduction policy"). In other words, an employer's failure to "ensure" that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal. Rather, it is the failure to compensate an employee who worked with the employer's knowledge through an unpaid meal break--whether the employee reported the additional time or not--that potentially violates the FLSA. See, e.g., Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny

compensation simply because the employee failed to properly record or claim his overtime hours."); Saleen v. Waste Mgmt., Inc., 649 F. Supp. 2d 937, 940 (D. Minn. 2009) ("Plaintiffs . . . agree that, as long as [the employer] reverses the half-hour deduction when it becomes aware that a worker has not taken a meal break, [the employer] does not act unlawfully."). Therefore, Defendants' adoption of a system that shifts the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break, without more, does not constitute a policy that violates the FLSA.

Finally, even if Plaintiffs' As-Applied Theory was cognizable, Plaintiffs are conflating the standards for pleading a plausible claim for relief sufficient to withstand a motion to dismiss with the rules for certifying a collective action under Section 216(b) of the FLSA. In seeking to certify a collective action under the FLSA, Plaintiffs must demonstrate that they are similarly situated to the members of the proposed class, which "requir[es] at a minimum that they make a 'modest factual showing' that they and the putative class members were 'victims of a common policy or plan to violate the law.'" Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 206 (N.D.N.Y. 2009) (quoting Ruggles v. Wellpoint, Inc., 591 F. Supp. 2d 150, 158-59 (N.D.N.Y. 2008)); see also Levy v. Verizon Info. Servs. Inc., Nos. 06-CV-1583, 06-CV-5056, 2007 WL 1747104, at *3

22

(E.D.N.Y. June 11, 2007). However, before the Court even reaches the certification stage, it must determine whether the Lead Plaintiffs have standing--whether "they personally have been injured, not [whether] injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) (internal quotation marks and citation omitted); see also Indergit v. Rite Aid Corp., No. 08-CV-9361, 2009 WL 1269250, at *3-5 (S.D.N.Y. May 4, 2009).

Thus, to survive a motion to dismiss, Plaintiffs must allege facts showing that each Lead Plaintiff was personally denied overtime by Defendants. See Doe v. Blum, 729 F.2d 186, 189-90 & n.4 (2d Cir. 1984). Pleading facts that show that Defendants utilize a policy that violates the FLSA without showing that the Lead Plaintiffs were injured by that policy will not defeat a motion to dismiss. See Cavallaro, 2011 WL 2295023, at *2 ("Inclusion of class allegations does not relieve a plaintiff of alleging that she has suffered an injury in fact, fairly traceable to the challenged action of the defendants, that may be redressed by a decision in her favor." (citing Lujan v. Defenders Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))).

2. Unpaid Overtime[8]

For Plaintiffs to state a claim for relief under the FLSA, the FAC must contain allegations that each Lead Plaintiff (1) worked compensable hours in excess of forty hours per week[9]

---

[8] With respect to Plaintiffs' NYLL Overtime Claims, they are analyzed under the same standard as FLSA Overtime Claims. See Whalen v. J.P. Morgan Chase & Co., 569 F. Supp. 2d 327, 330 n.2 (W.D.N.Y. 2008) ("The relevant portions of New York Labor Law do not diverge from the requirements of the FLSA . . . ."), rev'd on other grounds sub nom. Davis v. J.P. Morgan Case & Co., 587 F.3d 529 (2d Cir. 2009); DaSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 510 n.5 (E.D.N.Y. 2011).

[9] Plaintiffs also appear to assert claims for straight-time pay for all unpaid hours worked below the overtime threshold ("Gap Time Claims"). (See, e.g., FAC §§ 63, 68.) The Court finds it troubling that Plaintiffs attempt to assert these claims in their FAC because the Court has already dismissed them with prejudice. See Wolman v. Catholic Health Sys. of Long Island, Inc., No. 10-CV-1326, 2010 WL 5491182, at *5 & n.7 (E.D.N.Y. Dec. 30, 2010) (dismissing Gap Time Claims in the Second Amended Complaint). Gap Time Claims are not cognizable under the FLSA when there is an employment contract that provides compensation for all non-overtime hours. See id. (collecting cases). Here, as in the Second Amended Complaint, Plaintiffs allege precisely that: that they worked under "express oral contracts" and "implied contracts" that guaranteed them pay for "all hours worked," at a "set rate of pay, with a set work schedule." (FAC ¶¶ 174, 176-77, 180, 183, 184-85.) Given these allegations, Plaintiffs' FLSA claims for unpaid wages below the overtime threshold are without merit and accordingly are again DISMISSED WITH PREJUDICE.

On the other hand, the NYLL does recognize Gap Time Claims and "provides for full recovery of all unpaid straight-time wages owed." Hintergerger v. Catholic Health System, No. 08-CV-945S, 2012 WL 125152, at *5 (W.D.N.Y. Jan. 17, 2012); see also NYLL §§ 190(1), 191(d); Gordon, 2009 WL 4042929, at *4. Thus, to the extent that the Lead Plaintiffs have adequately pled that they worked compensable time for which they were not properly paid, Plaintiffs have a statutory right under the NYLL to recover straight-time wages for those hours.

and (2) was not properly compensated for this overtime when (3) Defendants knew or should have known that he or she was working overtime. 29 U.S.C. § 207(a)(1); see also Kuebel, 643 F.3d at 361 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).

### a.   Compensable Hours

Plaintiffs assert that they should have been compensated for time spent working during meal breaks, for work completed before and/or after scheduled shifts, and for attending staff meetings and training programs.  The Court will discuss each claim separately.

### i.   Automatically Deducted Meal Periods

"[M]eal periods are compensable under the FLSA when employees during a meal break perform duties predominantly for the benefit of the employer."  Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 65 (2d Cir. 1997); see also Kohlheim v. Glynn Cnty., 915 F.2d 1473, 1477 (11th Cir. 1990) ("[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal.").

Here, Wolman, Iwasiuk, and Lundy all assert that their meal breaks were "typically" missed <u>or</u> interrupted. (FAC ¶¶ 56, 58, 60.) While the meal breaks that are missed altogether are compensable, interrupted meal breaks are only compensable if an employee is required "to give up a substantial measure of his time and effort." <u>Hill v. United States</u>, 751 F.2d 810, 815 (6th Cir. 1984); <u>see also</u> <u>Mendez v. Radec Corp.</u>, 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("[T]he relevant question is whether the break itself is predominantly spent on activities for the employer's benefit, not on whether the employee did anything at all for the employer's benefit.").

Here, the FAC is void of any facts regarding the nature and frequency of these interruptions during the relevant time period or how often meal breaks were missed altogether as opposed to just interrupted;[10] thus the FAC has failed to state a claim that these interruptions are compensable. <u>See</u> <u>Mendez</u>, 232 F.R.D. at 84 ("If it is determined that lunch breaks were rarely interrupted and only for brief periods, then no compensation would be required.").

---

[10] The Court notes that the FAC states that the nature of the interruptions is "further discussed below" (FAC ¶¶ 56, 58, 60); however, there are no additional facts in the FAC related to any of the Lead Plaintiffs' meal breaks.

### ii.  Off-Shift Work

Work performed outside of an employee's scheduled work shift is compensable if it is "an integral part of and indispensable to" the proper and efficient performance of the job," Mitchell v. King Packing Co., 350 U.S. 260, 262-63, 76 S. Ct. 337, 100 L. Ed. 282 (1956), and the time spent completing such work is more than "de minimis," see Reich v. N.Y.C. Trans. Auth., 45 F.3d 646, 652 (2d Cir. 1995); Singh v. City of N.Y., 524 F.3d 361, 371 n.8 (2d Cir. 2008).  In deciding whether time should be excluded from compensation as de minimis, the Court should consider:  "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis."  Reich, 45 F.3d at 652 (internal quotation marks and citation omitted).

Here, Wolman asserts that she spent fifteen minutes prior to the start of every shift "prepar[ing] her assignments" (FAC ¶ 56) and Iwasiuk asserts that she spent thirty minutes prior to the start of every shift "prepar[ing] her assignments or read[ing]  report [sic]" and two hours after each shift "writing and uploading reports." (FAC ¶ 58.)  The Court finds that these facts alone are insufficient to state a claim that the time is compensable because the FAC contains no facts

indicating whether it was necessary for Wolman or Iwasiuk to complete these tasks outside of their scheduled shifts.

With respect to Lundy, the FAC states that he arrived thirty minutes early to each shift to be updated by the nurse working the prior shift and he stayed thirty minutes after each shift[11] to finish charting and update the nurse working the following shift. (FAC ¶ 60.) The Court finds that these facts state a plausible claim that his off-shift work was necessary for the proper and efficient performance of his job. See Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 718 (2d Cir. 2001) (holding that a radiological technologist was entitled to compensation for the fifteen minutes spent before her shift each day turning on the x-ray processing machine, letting it warm up, and performing tests on the machine because "the proper performance of [her] job required th[is] preparatory work to be completed when the first walk-in patient could potentially arrive").

---

[11] The Court notes that Lundy also asserts that he "at times" worked an additional three hours after the scheduled end to his shift to work with patients, deal with unexpected procedure, speak with a family or meet with a supervisor." (FAC ¶ 60.) While it is plausible that such tasks were necessary for the proper performance of his job, the lack of specificity regarding how often he was required to stay this late makes it impossible to determine whether such time was de minimis. See Reich, 45 F.3d at 652.

### iii. <u>Training Programs</u>

"Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable." <u>Chao v. Tradesmen Int'l</u>, 310 F.3d 904, 907 (6th Cir. 2002). However, training programs are not compensable if "(a) Attendance is outside of the employee's regular working hours; (b) Attendance is in fact voluntary; (c) The course, lecture, or meeting is not directly related to the employee's job; and (d) The employee does not perform any productive work during such attendance." 29 C.F.R. § 785.27; <u>see also</u> <u>Wolman</u>, 2010 WL 5491182, at *3.

Here, Wolman and Lundy have asserted facts sufficient to state a claim that the monthly, mandatory staff meetings were compensable.[12] However, the Court finds that Wolman failed to assert facts sufficient to state a claim that the ten hours of respiratory therapy credits were compensable: The FAC does not state where or when these credits were obtained or if they were mandatory. <u>See,</u> <u>e.g.</u>, <u>Price v. Tampa Elec. Co.</u>, 806 F.2d 1551, 1551-52 (11th Cir. 1987) (holding that meterman was not entitled to compensation for time spent taking a course to advance to a higher paying job classification because his employer did not require him to take the course and he would have remained a

---

[12] Iwasiuk does not assert that she ever attended any trainings or meetings for which she was not properly compensated.

meterman with the same responsibilities and credits had he chosen not to take the course).

### b. In Excess of 40 Hours per Week

To survive a motion to dismiss, the FAC must also approximate the number of overtime hours worked per week in excess of forty for which the Lead Plaintiffs did not receive overtime pay. See Nichols v. Mahoney, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). The FAC fails to do that here.

### i. Wolman

In a "typical" week, Wolman worked three shifts totaling 37.5 hours. So even if the Court assumes that she missed her entire meal break every shift (which was not pled), this would only add 1.5 hours to her weekly total. One week per month, she attended a thirty minute meeting. Again assuming that she missed every unpaid meal break that week, she still fails to plead that she worked over 40 hours in one week. While Wolman asserts that she "occasionally" worked an additional or extended shift, the FAC fails to state how often this occurred or whether it ever resulted in unpaid overtime. Instead, the FAC conclusorily states that Wolman "should have been paid overtime rates [for the uncompensated time] when [her] scheduled shifts exceeded 40 hours in a week . . . or when the

uncompensated time pushed her hours for the week over 40" (FAC ¶ 56), without stating how often, if ever, this happened. Such inartful, conclusory pleading will not defeat a motion to dismiss, and Wolman's FLSA claims are DISMISSED WITHOUT PREJUDICE.

### ii. <u>Iwasiuk</u>

Similarly, Iwasiuk has failed to approximate the total number of overtime hours worked for which she did not receive compensation. The FAC asserts that two weeks every month, Iwasiuk worked four shifts, or thirty hours, per week. Again, if the Court assumes that she missed every unpaid meal break (which was not pled), this would only add two hours to her weekly total--still well below forty hours. The other two weeks each month, she worked either five or six shifts, totaling 37.5 or 45 hours per week. Assuming she worked five shifts without ever taking a lunch break, she worked exactly forty hours, which does not entitle her to overtime. Assuming she worked six shifts, she would be entitled to overtime compensation for any meal breaks that were spent predominantly for the benefit of Defendants. However, the FAC does not assert how often, if ever, this happened. Rather, it again conclusorily states that any uncompensated time worked "should have been paid at overtime rates when [her] scheduled shifts exceeded 40 hours in a week . . . or when the uncompensated time pushed her hours over

40 in a week." (FAC ¶ 58.) Accordingly, Iwasiuk's FLSA claims are also DISMISSED WITHOUT PREJUDICE.

### iii. <u>Lundy</u>

As for Lundy, Plaintiffs concede that he never worked more than forty hours in one week. Therefore, Lundy's FLSA claims are DISMISSED WITH PREJUDICE.[13]

## III. <u>New York State Law Claims</u>

Under <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's "early stages." <u>See also</u> 28 U.S.C. § 1367(c)(3). As discussed above, the Court has dismissed all of Plaintiffs' federal claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and DISMISSES them WITHOUT PREJUDICE on this basis. <u>See Carnegie-Mellon</u>, 484 U.S. at 350.

---

[13] Even if the Lead Plaintiffs sufficiently pled that they worked overtime hours without compensation, they are only entitled to compensation for those hours if the employer knew or should have known that the additional hours were being worked. <u>See Kuebel</u>, 643 F.3d at 361. The Court finds that Defendants' knowledge has been adequately pled here.

IV.  <u>Leave to Amend</u>

In opposing this motion to dismiss, Plaintiffs sought leave to amend in the event that the Court decided to dismiss their claims.  (Pl. Opp. at 2.)  Leave to amend should be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Notwithstanding the fact that Plaintiffs have squandered four attempts to plead a plausible FLSA claim, the Court hereby GRANTS Plaintiffs <u>limited</u> leave to file a Fifth Amended Complaint.  The contours of that leave are as follows:

As mentioned above, Plaintiffs' FLSA claims against all Defendants except Good Samaritan are dismissed with prejudice.  Plaintiffs were warned in the Court's May 5, 2011 Order that to state a claim against these Defendants they must provide the Court with specific facts regarding to whom <u>at these facilities</u> the Lead Plaintiffs spoke regarding their uncompensated time, who denied them the ability to report their uncompensated time, and what documents from these facilities, if any, affirmatively stated that the Lead Plaintiffs were being fully paid for the work for which they assert they were entitled to be paid.  <u>Wolman</u>, 2011 WL 1741905, at *4.  In response, Plaintiffs filed the FAC, which named only individuals employed by Good Samaritan.  (<u>See</u> FAC ¶¶ 57 (Jim O'Connor), 59 (Cindy Dodenhoff and Donna Roberto), 61 (Good Samaritan's Director of Nursing).)  Therefore, for these reasons and those articulated

above, the Court finds that any additional pleading would be futile and DENIES Plaintiffs' request to amend as against these Defendants.[14]  To the extent that Plaintiffs wish to assert NYLL and common law claims against these Defendants, Plaintiffs are free to do so in state court.

Additionally, Lundy's FLSA claim is dismissed with prejudice as Plaintiffs concede that he never worked more than forty hours in a given workweek.  As such, any amendment of Lundy's FLSA claim would be futile, and Plaintiffs are DENIED leave to so amend.  To the extent that Lundy wishes to assert NYLL and common law claims against Defendants, those claims are dismissed without prejudice so he is also free to do so in state court.

Wolman's and Iwasiuk's FLSA claims, on the other hand, are dismissed without prejudice; therefore, they are GRANTED leave to file a Fifth Amended Complaint on behalf of a putative class, against Good Samaritan only, asserting violations of the FLSA and NYLL.  That being said, Plaintiffs should not merely

---

[14] Since all claims against these Defendants are dismissed with prejudice, Defendants' preclusion arguments are now moot. Defendants argue that, to the extent that the resolution of Plaintiffs' claims requires interpretation of a CBA, they are precluded by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  However, none of the Lead Plaintiffs were a party to a CBA while employed at Good Samaritan (FAC ¶¶ 56, 58, 60), and the only Defendants subject to CBAs (St. Catherine, St. Charles, St. Joseph, and Mercy) have been dismissed as defendants in this action.

add paragraphs to the FAC, as the majority of the FAC is comprised of useless, conclusory allegations which are repeated many times over. If Plaintiffs choose to file a Fifth Amended Complaint, the Court expects that it be concise and that it respond to the Court's concerns expressed herein.

Further, while Wolman's and Iwasiuk's common law claims are dismissed without prejudice, Plaintiffs should seriously consider whether they want to replead these claims in their Fifth Amended Complaint. In rejecting the Third Amended Complaint, the Court warned Plaintiffs that the common law claims "suffer from the same pleading deficiencies as Plaintiffs' statutory claims." Wolman, 2011 WL 1741905, at *4 (also stating that "were the Court addressing Plaintiffs' common law fraud claim now, it would dismiss it for woefully failing to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard"). Yet the common law claims in the FAC are nearly identical to those in the Third Amended Complaint. If Plaintiffs' Fifth Amended Complaint contains similarly inadequate and conclusory allegations in support of their common law claims, the Court will consider imposing sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

V.   Defendants' Motions to Strike

Also pending before the Court are Defendants' letter motions to strike the additional material submitted by

Plaintiffs in opposition to Defendants' motion to dismiss. The Court DENIES Defendants' motions at this time (although it notes that the additional information submitted was of little use) and warns that neither party shall submit such material in the future without first seeking the Court's leave.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 193) is GRANTED. Plaintiffs' FLSA claims against CHS, St. Catherine of Sienna Medical Center, St. Charles Hospital and Rehabilitation Center, St. Francis Hospital, Our Lady of Consolation Geriatric Care Center, Nursing Sisters Home Care, and Harden are hereby DISMISSED WITH PREJUDICE, and the Clerk of the Court is directed to terminate them as Defendants in this action. Lundy's FLSA claim is DISMISSED WITH PREJUDICE, and the Clerk of the Court is directed to terminate him as a Plaintiff in this action. All remaining claims are DISMISSED WITHOUT PREJUDICE.

The Court GRANTS Wolman and Iwasiuk leave to file a Fifth Amended Complaint against Good Samaritan. Plaintiffs have thirty (30) days to file such Fifth Amended Complaint. If the remaining Plaintiffs fail to file a Fifth Amended Complaint within thirty (30) days of the date of this Memorandum and Order, the Clerk of the Court is directed to mark this matter closed.

Additionally, Defendants' motions to strike (Docket Entries 202, 214) are DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     February _16_, 2012
           Central Islip, NY